IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT CURT BRITTON, III

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.

ORDER

12-cv-545-wmc

---

Pursuant to 42 U.S.C. § 405(g), plaintiff Robert C. Britton seeks judicial review of a final administrative decision of the Commissioner of Social Security, which affirmed an administrative law judge's finding that Britton was not disabled within the meaning of the Social Security Act. This appeal followed.[1] Britton principally contends that remand is warranted because the ALJ's decision regarding his residual functional capacity ("RFC") fails to address his "mental limitations" and/or adequately discuss "medical findings" in the record. For the reasons set forth below, the case will be remanded to the Commissioner for rehearing.

## BACKGROUND

**I. Procedural History & Factual Background**

On February 7, 2012, Administrative Law Judge Joseph Jacobsen issued a decision denying Britton's application for Disability Insurance Benefits ("DIB"). (AR 20.)[2]

---

[1] This court heard oral argument on February 10, 2014.
[2] The cites in this Order are drawn from the Administrative Record. (Dkt. #7.)

Britton filed a timely request for review of the ALJ's decision. On July 16, 2012, the Appeals Council denied Britton's request for review making the ALJ's decision the final determination of the Commissioner. (AR 9.) On August 6, 2012, Britton filed a timely complaint for judicial review in the United States District Court for the Western District of Wisconsin pursuant to 42 U.S.C. §405(g).

Britton is a 27-year-old veteran alleging disability due to mental health symptoms after serving in the United States Navy from September 2003 through September 2007 (AR 57, 300.) He alleges that he is limited by his Post-Traumatic Stress Disorder ("PTSD") and Traumatic Brain Injury ("TBI") that has caused short-term memory loss and flashbacks that have previously caused him to be violent. Britton alleges that these symptoms have limited his ability to perform work-related activities and to function appropriately in a routine work environment. (AR 14.)

Britton developed severe issues of PTSD during his time in the Navy while deployed in Iraq and Afghanistan. Some of this stems from incidents on the flight deck of the USS Ronald Reagan, such as witnessing his friend being "dragged across the flight deck of an aircraft carrier by a retracting arresting gear cable." (AR 368.) Britton also described other traumatic experiences in which "he saw accidents on a daily basis – people getting fingers sliced off and the 'metallic smell of blood'." (AR 368.)

On December 16, 2008, Britton "screened positive for depression and PTSD." (AR 241.) Britton developed "panic attacks over the sight of blood or graphic pictures of

wounded people or soldiers." (*Id.*) Britton developed additional psychological problems as a result of his service history, including severe anxiety, depression and anger issues. (AR 230.)

## II.  Relevant Medical Evidence[3]

On May 26, 2009, Dr. Joseph Breitenstein, Ph.D., describes Britton's history with TBI and PTSD, noting that "[Britton] . . . was knocked around several times from jet exhaust. His outpatient counselor recommended a TBI screen but strongly suspects that deficits in memory and concentration problems are more due to anxiety." (AR 565.) "On the Mississippi Scale for Combat-Related PTSD, the veteran had a score of 135 far surpassing the generally accepted cut-off of 107 considered by the Veteran's Administration to be indicative of PTSD. Classification: AXIS I: PTSD, chronic…AXIS V: GAF solely related to the corroborated stressor = 56." (*Id.*)

On July 23, 2009, Britton's therapist from the VA, Licensed Clinical Social Worker Michael Knapp, described Britton's "increase in anxiety, panic attacks, and general loss of emotional control," noting that he feels "very distressed because he feels he has lost control. (AR 225.) Regarding his ability to pursue academic opportunities, Knapp noted that Britton "expresses his apprehension about his ability to cope with the academic demand considering his current symptoms of anxiety, inability to concentrate, poor short term memory and retention, intrusive traumatic memories, and feelings of

---

[3] The medical evidence dates back to 2008.  Over the next four years, Britton saw a number of different health care providers.  The following summary of his medical records is organized chronologically.

3

estrangement." (AR 376.) On December 30, 2009, Knapp also noted Britton's developing anger issues, observing that "[Britton] feels a growing anger within him that has not been present before. He is concerned about this and his potential for volatile reactions to things that irritate him." (AR 281.) Knapp further noted Britton's emotional volatility on January 22, 2010. One month later, Knapp logged a baseline condition of elevated stress and anxiety, noting that he "continues to feel angry and act out if provoked to fighting." (AR 360, 281.)

On August 22, 2010, Rebecca Angle, Ph.D., completed a psychological evaluation of Britton. (AR 396-401.) Dr. Angle opined that "[t]he claimant would likely have the ability to understand, remember, and carry out simple instructions that might be given to him. He presents as a fairly angry individual and would not likely get along well with supervisors or coworkers at this time. His ability to maintain his concentration and work pace would likely be limited by his anxiety and outbursts. The claimant is extremely irritable and would not manage work related stress at this time." (AR 400.)

Five days later, the VA's LCSW, Knapp, essentially confirmed Angle's assessment:

> This writer would vigorously disagree with any opinion concluding that Mr. Britton's overall impairment is anything but severe. In my opinion his GAF score has not improved from the 45 he was given at his Comp and Pen Exam in April.
>
> In my professional experience this veteran's degree of impairment: fits well within that of the cohort receiving full compensation for service connected PTSD. I believe the greatest evidence is that which compares the degree of loss in his functioning compared to that prior to his military service. In my clinical opinion the veteran cannot at this time succeed academically, as he has demonstrated, despite his best efforts. I believe also that his interpersonal impairment is such that he would not be able to negotiate the normal stressors he

4

would find in the workplace. I believe his condition warrants either a full 100% rating or the determination of unemployability.

(AR 248.)

On September 7, 2011, a state consultant, Joan Kojis, Ph.D., completed a Residual Functional Capacity evaluation form and found that Britton had mild limitations in the activities of daily living and moderate limitations in Social Functioning and in Concentration, Persistence and Pace ("CPP").  (AR 413.)  On the Mental Residual Functional form completed on the same date, Dr. Kojis found moderate limitations in his ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and work week without interruptions from psychologically-based symptoms; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to respond appropriately to changes in the work setting.  (AR 427-428).

On October 7, 2011, a second state consultant, Beth Jennings, Ph.D. found moderate limitations in social functioning and CPP.  (AR 473.)  On the Mental RFC form, Dr. Jennings found similar moderate limitations as Dr. Kojis; however, she did find marked limitations in the ability to interact appropriately with the general public.  (AR 459.)

**III. Administrative Hearing**

On February 7, 2012, the ALJ found that Britton had (1) not engaged in substantial gainful activity since January 23, 2009, the alleged onset date; and (2) the following "severe" impairments: "posttraumatic stress disorder, depression, and mild traumatic brain injury." (AR 11.) He also found that Britton had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[4] (AR 12.) Based on these impairments, the ALJ determined that Britton had the Residual Functional Capacity "to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to simple, routine, repetitive tasks in a low stress job (defined as one with only occasional decision-making or changes in the work setting required. He is precluded from piecework or production line type work. Finally, he is limited to only occasional interaction with the public and coworkers (with no tandem tasks), and work must be isolated, with only occasional supervision." (AR 14.)

At step four, the ALJ determined that Britton was unable to perform any past relevant work as a security guard or Navy aviation helper, which were both semi-skilled jobs. The vocational expert testified that these past jobs went beyond the claimant's defined RFC. (AR 19.) Turning to step five, the ALJ relied upon a vocational expert's opinion that "[c]onsidering the claimant's age, education, work experience, and residual

---

[4] The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (AR 19.) Accordingly, the ALJ found that Britton was *not* under a disability, as defined in the Social Security Act, from January 23, 2009, through the date of this decision. (AR 20.)

## OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Secretary of Health and Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992). A decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The ALJ must also explain his "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Id.* *See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). When the administrative

law judge denies benefits, he must build a logical and accurate bridge from the evidence to her conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

"Although a claimant has the burden to prove disability, the ALJ has a duty to develop a full and fair record." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (citing *Thompson v. Sullivan,* 933 F.2d 581, 585 (7th Cir. 1991)); *see also Richards v. Astrue* , 370 F. Appx. 727, 731, 2010 WL 1443893, at *3 (7th Cir. Apr. 13, 2010) ("[A]n ALJ may not draw conclusions based on an undeveloped record and has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable"); *Smith*, 231 F.3d at 437 ("Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence.")

Here, Britton principally contends that remand is merited because: the Residential Functional Capacity adopted by the ALJ fails to address his "mental limitations"; and/or the ALJ's decision does not adequately discuss "medical findings" in the record. The court agrees. Specifically, Britton maintains that the ALJ: (1) erroneously found Britton could have "occasional" contact with the general public, when there is evidence in the record of a marked limitation; (2) erroneously found Britton could perform low-stress work despite crediting evidence that he was unable to "manage work related stress" at the time; (3) failed to explain how Britton's CPP limitations were accounted for in the RFC determination;[5] (4) failed to include any memory-related limitations in the RFC determination; (5) failed to accord appropriate weight to the Veteran's Administration (VA) disability rating; and (6) erroneously relied on selected

---

[5] Bound within issues (1)-(3), Britton further contends that the hypothetical questions proposed to vocational expert are flawed because they are predicated on a deficient RFC determination.

8

evidence from 2009, without giving proper consideration of Britton's worsening condition in 2010 and 2011. Because the court finds that the RFC determination is riddled with ambiguities and inconsistencies not explained in the ALJ's decision, the court will remand this case.

I. **Finding that Britton Could have "Occasional" Contact with the General Public**

Britton contends that the ALJ failed to articulate why his ability to interact with the general public was designated as "occasional" despite credible evidence to the contrary. (AR 459.) Britton argues that this error is a product of the ALJ's unfounded reliance on the opinions of the state's two consulting experts:

> I place significant weight on the opinions of the State agency medical consultants. They explained that the medical record does not support that the claimant's impairments are severe as alleged and that, instead, the symptoms described during treatment reflect **moderate limitations**. (Exhibits 7F, 8F, 12F, and 13 F.)

(AR 18 (emphasis added).)

The medical experts' opinions referred to in the passage above were from Dr. Kojis (exs. 7F and 8F) and Dr. Jennings (exs. 12F and 13F). While both consultants supplied medical evidence going to Britton's cognitive abilities, the ALJ's analysis of that evidence and resulting RFC determination are not supported by substantial evidence.

As an initial matter, the ALJ *mischaracterizes* Dr. Jennings's report. While Dr. Kojis's report rated all of Britton's mental impairments as moderate, the same cannot be said with respect to Dr. Jennings' report. On the contrary, Dr. Jennings expressly noted Britton's ability to interact with the general public "as *markedly* limited." (AR 459

9

(emphasis added).) Thus, even to say that "all" of the State agency medical consultants noted "moderate limitations" distorts Dr. Jennings's report. Without adequate explanation, the court is left to surmise whether the ALJ even considered Dr. Jennings' finding of this "marked limitation" in his review. (AR 18.) This kind of mischaracterization of evidence hardly meets the substantiality test -- and is not reasonable in light of the record as whole. As such, remand is warranted. *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *Smith* 231 F.3d at 438; *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996) (stating that "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.")

Moreover, the ALJ's RFC determination is deficient because it fails to explain these inconsistencies in the record, particularly in circumstances where the ALJ has an obligation to do so*. See Huber v. Astrue*, 395 Fed. Appx. 299, 302 (7th Cir.2010); *Conrad v. Barnhart*, 434 F.3d 987, 991 (7th Cir.2006); SSR 96–8p (stating that the ALJ must "explain how material inconsistencies in the evidence in the case record were considered and resolved.") Here, there is an apparent inconsistency in the analysis: Dr. Kojis provides a moderate rating of Britton's ability to interact with the public, while Dr. Jennings provides a marked rating, yet the ALJ makes no effort to reconcile this evidence. There is also no explanation by the ALJ in the decision.

Compounding the problem is that both reports are published within a month of each other. Tellingly, *both* reports are then somehow afforded significant weight despite their obvious conflict. Given that the weight supplied to each report is the same, the

court finds that there is nothing in the ALJ's decision to help square this inconsistency, providing further cause for remand.  *See Huber* 395 F. Appx. at 302 (stating that when determining RFC, an ALJ must provide a narrative discussion to "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.")  On the contrary, the other evidence of the severity of Britton's PTSD wholly substantiates Jennings' opinion.

Finally, there is little doubt that Dr. Jennings' rating of Britton's ability to interact with the public is different from Dr. Kojis's.  Unless this difference is explained by reference to other, as yet undisclosed, evidence in the record, the ALJ may choose to seek out further evidence in order to fully and fairly develop the record. *See Richards v. Astrue*, 370 Fed. Appx. 731 ("[A]n ALJ may not draw conclusions based on an undeveloped record and has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable"); *Smith*, 231 F.3d at 437 ("Failure to fulfill this obligation is 'good cause' to remand for gathering of additional evidence.")

## II.  Ability to Perform Low-Stress Work

The ALJ found that Britton would be limited to "a low stress job (defined as one with only occasional decision-making or changes in the work setting required)," but fails to explain why "low stress" adequately captures Britton's limitation when there is credited evidence in the record flatly stating that he cannot "manage work related stress at this time."  (AR 400.)

Certainly, the court observes that there is no direct evidence to substantiate the ALJ's low-stress finding. While this does not prevent the ALJ from drawing an inference from the evidence in the record, there must be adequate explanation of the evidence to permit meaningful appellate review. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (stating that a decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review"); *Herron* 19 F.3d at 333–34.

Here, the court finds that the ALJ's decision fails to articulate a sufficient basis for arriving at the low stress finding, particularly where there is evidence in the record that cuts against this conclusion. The ALJ's discussion of Dr. Angle's evidence is illustrative. The ALJ condenses Dr. Angle's entire six-page report into a solitary paragraph, stating:

> The consultative examiner stated that the claimant would be able to understand, remember, and carry out simple instructions but that he would have *difficulty* interacting with supervisors or coworkers, maintaining work pace, and *managing work related stress*. The opinion is given significant weight; it is consistent with the record as a whole and the conclusions in this decision.

(AR 18.)

Even taken on its face, this summary does *not* support a finding that Britton can manage low stress work. Comparing this summary paragraph with relevant portions of Dr. Angle's actual report, further calls into question the ALJ's finding with respect to Britton's ability to manage *any* work related stress, at least at the time of Dr. Angle's consultative report:

> The claimant would likely have the ability to understand, remember, and carry out simple instructions that might be given to him. He presents as a fairly angry individual and would not likely get along well with supervisors or coworkers at this time. His ability to maintain his concentration and work pace would likely be limited by his anxiety and outbursts. The claimant is extremely irritable and would *not manage work related stress at this time.*

(AR 400.)

Without speculating as to the reasons for the ALJ's poorly truncated summation or outright mischaracterization of Dr. Angle's actual report, the court a marked, indeed potentially outcome-determinative, difference between the ALJ's statement that Britton has "difficulty … managing work related stress" and Dr. Angle's actual medical opinion stating that Britton would "not manage work related stress at this time." (AR 400.) By itself, this inconsistency or, at best, ambiguity between the evidence and the ALJ's decision, requires an explanation, especially since the ALJ purports to have given Dr. Angle's evidence significant weight. Even if the apparent inconsistency between Dr. Angle's opinion (no stress) and the RFC finding that Britton could tolerate "low stress," were not stark, the remaining ambiguity in the evidence of record as to Britton's ability to tolerate *any* stress would require explanation (or some logical bridge) for the ALJ's finding that he could tolerate low stress on the job. *See Huber*, 395 F. Appx. at 302.

Upon remand, the court recommends that the ALJ provide a more fulsome explanation of his interpretation of Dr. Angle's report and any other evidence in the record that he believes supports a low-stress limitation so that the court can better understand the logic behind the ALJ's decision. If need be, the ALJ may want to seek further evidence from Dr. Angle and/or other experts in the field to clarify Mr. Britton's actual tolerance of stress. If the ALJ cannot provide a proper explanation of how Dr. Angle's evidence can be properly accounted for in finding only a low stress limitation, then the ALJ may want to reconsider an award of benefits. At this juncture, and given

that the record requires further development, the court will leave to the ALJ how best to proceed.

**III. Britton's Concentration, Persistence and Pace Limitation**

Next, Britton challenges the ALJ's RFC determination with respect to CPP. Specifically, Britton contends the ALJ provided no rational explanation or support showing how he built a logical bridge between Dr. Kojis's multiple, moderate limitations and his ultimate finding that Britton's RFC for "light work" need only preclude "piecework or production line type work." (AR 13.) In response, the Commissioner's position is that the RFC sufficiently characterizes Dr. Kojis's opinion and that the "ALJ's decision may be affirmed regardless of whether it is unsupported by a physician's opinion (or not)." (Dkt. #17 at 13.) The Commissioner argues that this position is buttressed by the fact that the ALJ gave significant weight to Dr. Kojis's opinion. (*Id.* at 14-15.)

But the Commissioner's response misses the mark. Britton does not merely take issue with the piecework or production line limitation. Rather, he takes issue with the ALJ's failure to explain how *all* of Dr. Kojis's limitations have been properly captured by this single limitation referred to in the RFC determination. Specifically, Dr. Kojis opined that Britton had "moderately" limited abilities to (1) understand and remember detailed instructions; (2) carry out detailed instructions, maintain attention and concentration for extended periods; (3) work in coordination with (or proximity to) others without being distracted; (4) complete a normal workday and workweek without interruption from

psychologically based symptoms, and (5) perform at a consistent pace without an unreasonable number and length of rest periods. (AR 427-28.)

Ultimately, the court finds that Commissioner's briefing fails to squarely address Britton's contention that the ALJ (1) did not account for all of Dr. Kojis's moderate limitations or, at minimum, (2) failed to explain how the RFC translates these moderate limitations into the RFC determination. For example, the court can find nothing in the ALJ's reasoning to explain why limitations (4) and (5) were not accounted for in the RFC determination. On remand, the ALJ will need to explain how Dr. Kojis's limitations are addressed by his RFC determination. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

The Commissioner asserts that Britton's CPP limitations in the RFC *are* reflected by "limiting Britton to simple, routine and repetitive tasks, rather than detailed tasks," (dkt. # 17 at 15), but does not cite to anything in the ALJ's opinion, in the record, in the regulations or in case law to support that assertion. Had there been proper review of the relevant authorities, the argument (that limitations to simple routine and repetitive tasks) tends to cut against the Commissioner's position, not support it. While the verbiage does account for at least one of Dr. Kojis's limitations in his report (Britton's moderate limitation in understanding and remembering detailed instructions)[6] it begs the question as to how the limitation in the RFC also extends to limitations (4) and (5), both

---

[6] While Britton also argues that the ALJ failed to include any memory-related limitations in the RFC determination, this issue seems to overlap with the issue addressed here (*i.e.,* concentration, pace and persistence). Indeed, it appears on this record that deficiencies in concentration are tied to Britton's worsening memory in this case. (AR 285, 332.) As such, the ALJ should be mindful on remand to ensure that, to the extent that there is overlap between concentration and memory, as well as the other limitations.

of which are credited with significant weight. Without any explanation as to how some of Dr. Kojis's other limitations *were* translated into his RFC determination while others *were not*, this court is unable to engage in meaningful review. *See Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).[7] For example, in *O'Connor–Spinner,* the state examiner and the ALJ concluded that the claimant had moderate limitations in concentration, persistence and pace because of her depression, but the ALJ asked the vocational expert to consider only a "hypothetical worker [who] was restricted to routine, repetitive tasks with simple instructions." *Id*. at 617. The court of appeals rejected the Commissioner's argument that the limitation to routine and repetitive tasks "implicitly incorporated" the limitations for concentration, persistence and pace in part because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *Id.* at 620. As a result, the court remanded the case for additional proceedings*. See also Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008) (limiting claimant to "simple, unskilled work" may not account for claimant's mental

---

[7] In *O'Connor–Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), the Seventh Circuit noted that an ALJ does not have to use the magic words "concentration, persistence, and pace." *Id*. at 619–20. Accordingly, remand may not be necessary in certain circumstances such as: (1) where the record revealed that the VE had reviewed the claimant's medical records or heard testimony about the limitations; (2) where the ALJ used alternative phrasing and "it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform"; or (3) where the ALJ's hypothetical question specifically mentioned the underlying condition that caused the difficulties with concentration, persistence, and pace. *Id.* at 619–20. The court notes that none of these exceptions were argued by the Commissioner.

Compounding the problem on this record is the Seventh Circuit's recent statement in *O'Connor–Spinner* that while some exceptions exist, "the ALJ should refer expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." *Id*. at 619-20.

impairments). So, too, this case must be remanded because the ALJ failed to explain how it incorporated all of Britton's relevant impairments into his RFC analysis.

## IV. Vocational Expert Questions

Britton also contends that the ALJ erred with respect to the hypothetical questions proposed to the vocational expert because they did not reasonably reflect Britton's mental limitations. Such error, Britton says, derives from a deficient RFC determination. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (stating "hypothetical questions posed to [VE's] ordinarily must include all limitations supported by medical evidence in the record.") For reasons already discussed, the court agrees.

Specifically, the limitations omitted from the RFC finding – for example, the stress-related limitation of Dr. Angle and the CPP limitations of Dr. Kojis – are omitted from the ALJ's hypothetical questions to the vocational expert.[8] Based on existing case-law, the court finds that these defects taint the substantiality of the vocational expert's evidence, warranting remand.[9] *See Steele*, 290 F.3d at 942 (when posing his hypothetical to the VE, the ALJ was required to include all of a claimant's limitations "to ensure that the vocational expert [did] not refer to jobs that the claimant cannot work"); *O'Connor*

---

[8] The limitation with respect to concentration, persistence and pace are also not adequately accounted for in the RFC, similarly tainting vocation expert evidence on these limitations. In the Seventh Circuit, an ALJ is generally required to orient the VE to the totality of a claimant's limitations. *O'Connor–Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir.2009).

[9] The court makes one qualification to this finding. If on remand, the ALJ can adequately explain how Dr. Angle's opinion (regarding stress) was accounted for, then problems regarding her evidence and the vocational expert could fall away. If the deficiency in the RFC cannot be explained (or deficient articulation of the analysis persists), then the RFC determination will remain deficient, as will any questions posed to the vocational expert.

*Spinner* 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace"); *see also Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991) (stating that "testimony elicited by hypothetical questions that do not relate with precision to all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision.")

**V. Remaining Issues**

Britton raises additional issues related to the sufficiency of the underlying proceedings. Because the Court finds that the ALJ's RFC is not supported by substantial evidence and requires remand, it need not and will not address the merits of these other arguments except to provide the following limited guidance.

With respect to the fifth issue (addressing VA Decision), the ALJ may be well served to examine with the evidence referred to in the VA Decision supporting stress limitations. There would also seem reason to explain further how the VA came to a 100% unemployablity rating; whereas, the ALJ found that Britton was not disabled. Given that the ALJ purported to afford some weight to the VA decision, the ALJ could also offer further explanation of the relevance of that decision.

As to the sixth issue (Selective Use of Evidence from 2009), the court believes some explanation is in order as to why contradictory evidence from 2010 and 2011 is not equally, if not more relevant.

In issuance of this opinion, the court does not intend to suggest the result that should be reached on remand. Rather, the court encourages the parties and the ALJ to consider the evidence and issues, including the deficiencies identified in this order. *Pierce*

*v. Colvin*, 739 F.3d 1046, 1051 (2014) (noting that the court need not address a plaintiff's remaining argument, but noting that on remand the ALJ will need to take a "fresh look" at the RFC and vocational questions after the credibility issue has been re-evaluated); *see Mollett v. Astrue*, No. 3:11–CV–238 2012 WL 3916548, at *9-10 (N.D. Indiana Sept. 7, 2012) (stating that "[b]ecause the ALJ's error regarding the hypothetical questions requires remand, the court need not consider the claimant's arguments regarding the remaining issues); *Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, court declined to address other issues raised on appeal).

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying plaintiff Robert C. Britton III's application for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 25th day of February, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge